691 P.2d 683

**STATE of Arizona, Appellee,**

v.

**Richard BARNETT, Appellant.**

No. 6084.

Supreme Court of Arizona,
In Banc.

Nov. 26, 1984.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel Criminal Division, Galen H. Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, James R. Hart, II, Deputy Public Defender, Phoenix, for appellant.

GORDON, Vice Chief Justice:

Defendant Richard T. Barnett was indicted for aggravated assault, a class three felony, for shooting at a police officer during a confrontation. At the time of the shooting, defendant was on release on his own recognizance from an Ohio felony charge of aggravated burglary.

Prior to trial the state filed an allegation of dangerousness pursuant to A.R.S. § 13–604.01(A) which provided for a life sentence if defendant's Ohio "release" was "any other release." Defendant moved to dismiss the allegation of dangerousness on the ground that defendant was not on the type of release contemplated by A.R.S. § 13–604.01. A short time later, the state also alleged that defendant committed the crime while on bail or on his own recognizance under A.R.S. § 13–604(M). The trial court denied defendant's motion to dismiss the state's allegation of dangerousness under A.R.S. § 13–604.01.

At trial, defendant's primary defense was that he was so drunk he could not form the requisite intent to commit the crime. He was found guilty of aggravated assault with a deadly weapon, a class three felony. After trial, defendant admitted that he had been on release on his own recognizance from a felony charge in Ohio on the date of the offense herein. The trial judge sentenced defendant to "be imprisoned for a term of life, without possibility of parole for twenty-five years" pursuant to A.R.S. § 13–604.01(A). Since defendant was sentenced to life imprisonment, we have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031.

Defendant raised three issues on appeal:

(1) Whether the trial court erred in failing, *sua sponte*, to give an instruction to the jury defining "intentionally."

(2) Whether the trial court erred in sentencing defendant to a life sentence pursuant to the mandatory provisions of A.R.S. § 13–604.01.

(3) Whether there was a factual basis for finding that defendant was susceptible to the sentencing provisions of A.R.S. § 13–604.01(A).

I

Defendant first contends that the trial court should have *sua sponte* given an

instruction defining the word "intentionally" as used in the crime of assault.

In instructing the jury on the rules of law applicable to the case, the trial judge defined aggravated assault as follows:

"The crime of aggravated assault requires proof of the following two things:

"(1) The defendant committed an assault; and

"(2) The defendant used a deadly weapon, firearm or dangerous instrument."

The trial judge also instructed the jury on "assault":

"The crime of assault requires proof that:

"The Defendant *intentionally* put another person in reasonable apprehension of immediate physical injury." (emphasis added.)

Thereafter the trial judge instructed the jury with respect to the intoxication defense:

"No act committed by a person while intoxicated is less criminal by reason of his having been in such condition. However, for the crime of aggravated assault there must be proof that the Defendant acted *intentionally*. If you determine that the Defendant was intoxicated at the time, you may consider the fact that he was intoxicated in determining whether he could have *intentionally* committed the crime." (emphasis added)

◼ We first note that there was no attempt by defense counsel to introduce an

instruction defining "intentionally" or an objection on the court's failure to so instruct the jury. If a defendant does not object to a trial court's failure to give an instruction, the defendant may not claim error on appeal unless the failure to give an instruction rises to the level of fundamental error. *State v. Mincey*, 130 Ariz. 389, 636 P.2d 637 (1981), *cert. denied*, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982); *State v. Dippre*, 121 Ariz. 596, 592 P.2d 1252 (1979). Arizona Rules of Criminal Procedure, 21.3(c). Error is fundamental only if it goes to the foundation of the case or takes from a defendant a right essential to his defense. *State v. Mincey, supra; State v. Pulliam*, 87 Ariz. 216, 349 P.2d 781 (1960).

◼ Generally, a court need not define every phrase or word used by it in instructions given in a criminal prosecution. Where terms used in an instruction have no technical meaning peculiar to the law in the case but are used in their ordinary sense and commonly understood by those familiar with the English language, the court need not define these terms. *State v. deBoucher*, 135 Ariz. 220, 660 P.2d 471 (App. 1983). *See State v. Bice*, 127 Ariz. 312, 620 P.2d 227 (App.1980); *State v. Beers*, 8 Ariz. App. 534, 448 P.2d 104 (1968). *See also* A.R.S. § 1–213.[1]

◼ In this case, the trial court's instructions on assault and aggravated assault were derived from A.R.S. §§ 13–1203(A)(2) and 13–1204(A)(2).[2] "Intentionally" as

---

1. **"§ 1–213. Words and phrases.**
 "Words and phrases shall be construed according to the common and approved use of the language. Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning.

2. A.R.S. § 13–1203 reads in pertinent part:
 **"Assault; classification**
 "A. A person commits assault by:
 "1. Intentionally, knowingly or recklessly causing any physical injury to another person; or
 "2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or

"3. Knowingly touching another person with the intent to injure, insult or provoke such person.

\* \* \* \* \* \*

"A.R.S. § 13–1204 reads in part:
**"Aggravated assault; classification**
"A. A person commits aggravated assault if such person commits assault as defined in § 13–1203 under any of the following circumstances:
"1. If such person causes serious physical injury to another.
"2. If such person uses a deadly weapon or dangerous instrument."

\* \* \* \* \* \*

used in § 13–1203(A)(2) has been determined to be a general intent requirement; that is, the defendant need only intend the acts which he performed. *State v. Greenawalt*, 128 Ariz. 388, 626 P.2d 118 (1981); *State v. Bustamonte*, 122 Ariz. 105, 593 P.2d 659 (1979). Thus it is evident that the word "intentionally" is being used in its ordinary sense, and the court is not required to define it. *See, e.g., State v. Villafuerte*, 142 Ariz. 323, 690 P.2d 42 (1984) (failure to define "intent" as used in kidnapping statute, A.R.S. § 13–1304 not fundamental error); *State v. Schoenberger*, 216 Kan. 464, 532 P.2d 1085 (1975) (failure to define "intentionally" to establish aggravated assault not error where word so widespread in its usage that its meaning was readily comprehensible to the average person without further definition or refinement); *State v. Northcutt*, 598 S.W.2d 130 (Mo.1980) ("intentionally"); *State v. Jones*, 300 N.C. 363, 266 S.E.2d 586 (1980) ("intent"); *People v. Ortega*, 181 Colo. 223, 508 P.2d 784 (1973) ("specific intent"); *State v. Henry*, 87 S.D. 454, 210 N.W.2d 169 (1973) ("intent"); *Hogan v. State*, 496 S.W.2d 594 (Tex.Crim.App.1973) ("intentional"); *State v. Audette*, 128 Vt. 374, 264 A.2d 786 (1970) ("intent"); *People v. Wick*, 125 Ill.App.2d 297, 260 N.E.2d 487 (1970) ("intent" or "knowingly").

■ Defendant suggests that the trial court should have instructed the jury as to the meaning of intentionally pursuant to A.R.S. § 13–105 which reads in pertinent part:

"5. 'Culpable mental state' means intentionally, knowingly, recklessly or with criminal negligence as those terms are thusly defined:

"(a) 'intentionally' or 'with the intent to' means, with respect to a result or to conduct described by a statute defining an offense, that a person's objective is to cause that result or to engage in that conduct."

This is the general statutory definition of intent. However, the ordinary definition of "intentionally" is essentially the same. A common definition of "intention" is "a de-

termination to act in a certain way" or "what one intends to do or bring about." Webster's New Collegiate Dictionary 601 (1973). Both the statutory definition and the common definition of "intentionally" cover the same state of mind such that it would be difficult to find intent under one and not the other. In such a case, the term need not be defined. *See State v. Zaragoza*, 135 Ariz. 63, 659 P.2d 22 (1983) (words with common meaning need not be defined where the ordinary definition of the word and the statutory definition of the word are essentially the same); *Rizzuto v. State*, 407 A.2d 225 (Del.1979) (failure to define "sexual contact," which is specifically defined by statute, is not error because it has a common meaning that is tracked in the statute.)

■ We hold that the trial court did not commit fundamental error in failing *sua sponte* to define "intentionally" as used in the jury instructions.

## II

Defendant contends that the trial court erred in sentencing him to a life sentence pursuant to the mandatory provisions of A.R.S. § 13–604.01(A). Defendant argues that A.R.S. § 13–604.01 was not intended to apply to persons released on their own recognizance from another felony charge but to persons released who have been convicted of a felony. Defendant's argument is well taken.

The version of A.R.S. § 13–604.01(A) in effect at the time of the commission of the offense reads:

"**13–604.01. Offenses committed while released from confinement.**

"A. Notwithstanding any provision of law to the contrary, a person convicted of any felony offense involving the use or exhibition of a deadly weapon or dangerous instrument or involving the intentional or knowing infliction of serious physical injury upon another *if committed while the person is on probation, parole, work furlough or any other release* shall be sentenced to life imprisonment and is not eligible for suspension or

commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis except as specifically authorized by section 31–233, subsection A or B until the person has served not less than twenty-five years. A sentence imposed pursuant to this subsection shall be consecutive to any other sentence from which the convicted person had been temporarily released." (Emphasis added.)

Session Laws 1982, ch. 322, § 2. This section was the original enactment of A.R.S. § 13–604.01 added to the Criminal Code by the Legislature in 1982 and became effective on April 27, 1982. We must determine whether the phrase "or any other release" was intended by the Legislature to include persons who were released on their own recognizance pending trial on a criminal charge.

 In resolving this case, we can turn to several statutory construction rules. First, we believe that the canon of construction referred to as *ejusdem generis* applies. This rule provides that general words which follow the enumeration of particular classes of persons or things should be interpreted as applicable only to persons or things of the same general nature or class. *Yauch v. State, City of Tucson,* 109 Ariz. 576, 514 P.2d 709 (1973); *City of Phoenix v. Yates,* 69 Ariz. 68, 208 P.2d 1147 (1949). In our case, the general words "or any other release" are preceded by the words "probation, parole, work furlough." These words encompass a class of persons who have been previously convicted of a crime. Accordingly, we construe the phrase "or any other release" to be a release after a conviction.

This interpretation is bolstered by the amendment of A.R.S. § 13–604.01 which occurred in the next legislative session about one year after the original enactment. A.R.S. § 13–604.01(A) was amended to read:

**"§ 13–604.01 Offenses committed while released from confinement**

"A. Notwithstanding any provision of law to the contrary, a person convicted of any felony offense involving the use or exhibition of a deadly weapon or dangerous instrument or involving the intentional or knowing infliction of serious physical injury upon another if committed while the person is on probation for a conviction of a felony offense or parole, work furlough *or any other release from confinement for conviction of a felony offense* shall be sentenced to life imprisonment and is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis except as specifically authorized by § 31–233, subsection A or B until the person has served not less than twenty-five years. A sentence imposed pursuant to this subsection shall be consecutive to any other sentence from which the convicted person had been temporarily released." (emphasis added.)

 Even though a subsequent legislative change in the language of a particular statute is not controlling on a court, such a change is a strong indication of the legislature's original intent. *Police Pension Board of City of Phoenix v. Warren,* 97 Ariz. 180, 398 P.2d 892 (1965); *State v. Vondohlen,* 24 Ariz.App. 362, 538 P.2d 1163 (1975). *But cf. O'Malley Lumber Co. v. Riley,* 126 Ariz. 167, 613 P.2d 629 (App. 1980) ("[I]f legislative amendment is made after a considerable lapse of time and constitutes a clear and distinct change in the operative language, it is an indication of an intent to change rather than clarify the statute). The change in the operative language dealt directly with the phrase "or any other release" modifying this phrase by adding the language "from confinement for conviction of a felony offense." This modification occurred shortly after the original version of A.R.S. § 13–604.01 was enacted and is to us a clarification in order to reflect the intent of the original enactment to provide increased punishment only

for those persons who have actually been convicted of a felony.[3]

■ A third rule of statutory construction allows us to look at the title of A.R.S. § 13–604.01. While A.R.S. § 1–212 indicates that headings are not part of the law itself, where an ambiguity exists the title may be used to aid in the interpretation of the statute.[4] *City of Scottsdale v. Municipal Court of City of Tempe*, 90 Ariz. 393, 368 P.2d 637 (1962); *Garrison v. Luke*, 52 Ariz. 50, 78 P.2d 1120 (1938); *State v. Govorko*, 23 Ariz.App. 380, 533 P.2d 688 (1975).

The title of A.R.S. § 13–604.01 is *Offenses Committed While Released From Confinement.* The word "confine" is defined in Webster's New Collegiate Dictionary 237 (1973) as "to shut up: IMPRISON." Generally, for one to be imprisoned he must have been convicted of an offense. Thus the title indicates to us that the release which triggers the enhanced sentencing penalty in § 13–604.01 must have been the result of a confinement from a conviction.

Last, we believe our interpretation of A.R.S. § 13–604.01 comports with the general rule of construction stated in A.R.S. § 13–104.

"§ **13–104. Rules of construction.**

"The general rule that a penal statute is to be strictly construed does not apply to ˌthis title, but the provisions herein must be construed according to the fair meaning of their terms to promote justice and effect the object of the law, including the purposes stated in § 13–101."

To impose a life sentence with a mandatory imprisonment time of twenty-five years on a defendant who has been released on his own recognizance pending trial and who thus has the presumption of innocence does not to us promote justice according to a fair reading of the statute.

■ Additionally, we note that A.R.S. § 13–604(M) which was in existence at the time of defendant's sentencing was the appropriate sentencing enhancer in this case.[5] This section specifically covers the situation here in which a person is released on his own recognizance on a felony offense and during that release commits any other felony offense.

■ We hold that A.R.S. § 13–604.01 was not intended to apply to a defendant who has been released on his own recognizance on a criminal charge, and therefore the trial judge erroneously applied this section in sentencing defendant for the aggravated assault convictions. Since we have determined that the defendant was improperly sentenced under A.R.S. § 13–604.01, we need not decide defendant's third contention that there was not a sufficient basis in the record to determine that defendant was on "any other release" at the time of the aggravated assault. Pursuant to A.R.S. § 13–4035 we have examined the record for fundamental error and have found none. The judgment of conviction is affirmed, the sentence is vacated, and the case is remanded for resentencing.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

3. Additionally we note that A.R.S. § 13–604.-01(A) stated that the sentence "imposed pursuant to this subsection shall be consecutive to any other sentence from which the convicted person has been temporarily released." If one is released on his own recognizance pending trial, there is no sentence to which a consecutive sentence can be attached. This supports defendant's argument that this statute was only intended to apply to cases where a person has already been convicted of a felony offense.

4. "§ **1–212. Section headings; source notes; reviser's notes; cross references; exception**
"Except as provided in § 44–2216, heading to sections, source notes, reviser's notes and cross references are supplied for the purpose of convenient reference and do not constitute part of the law.

5. "M. A person convicted of committing any felony offense, which felony offense is committed while the person is released on bail or on his own recognizance on a separate felony offense shall be sentenced to a term of imprisonment two years longer than would otherwise be imposed for the felony offense committed while released on bond or on his own recognizance. The additional sentence imposed under this subsection is in addition to any enhanced punishment that may be applicable under any of the other subsections of this section."