NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DANNY JACOBS, *Appellant*.

No. 1 CA-CR 14-0433
FILED 11-19-2015

Appeal from the Superior Court in Maricopa County
No.  CR 2013-425900-001
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

DeBrigida Law Offices, Glendale
By Ronald M. DeBrigida, Jr.
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Peter B. Swann joined.

---

**T H U M M A**, Judge:

¶1          Danny Jacobs appeals his conviction and resulting sentence for kidnapping, claiming the superior court erred by denying his motion for judgment of acquittal and not using his requested definition of "shield" in responding to a jury question. Because Jacobs has not shown error, his conviction and resulting sentence are affirmed.

### FACTS[1] AND PROCEDURAL HISTORY

¶2          Early one morning in June 2013, Jacobs and his live-in girlfriend, S.W.,[2] got into an argument in their house. The argument quickly escalated into a physical fight, where Jacobs hit S.W. in the mouth. Although the fight continued, sometime later that morning, S.W. left the house, dropped her older daughter off at school and then called 9-1-1. Their two year-old daughter, D.W., remained in the house with Jacobs. When S.W. returned to the house accompanied by the police, Jacobs did not answer the door. When officers attempted to open the door, Jacobs held the lock and began to yell. Among other things, officers testified Jacobs yelled that if officers came into his house, they "were going to have to kill him in front of the child." Jacobs remained in the house with D.W., while the officers attempted to get D.W. out of the house and gain access to the house for several hours. Eventually Jacobs was taken into custody and D.W. was liberated without injury.

---

[1] On appeal, this court views the evidence in the light most favorable to sustaining the conviction and resolves all reasonable inferences against the defendant. *State v. Karr*, 221 Ariz. 319, 320 ¶ 2 (App. 2008).

[2] Initials are used to protect the victims' privacy. *State v. Maldonado*, 206 Ariz. 339, 341 n.1 ¶ 2 (App. 2003).

¶3        Jacobs was charged with kidnapping, a Class 2 felony, a domestic violence offense and a dangerous crime against children.[3] After the State rested in its case in chief, Jacobs unsuccessfully moved for a judgment of acquittal, arguing the State had not offered sufficient evidence Jacobs intended to use D.W. as a hostage, "a human shield" or for ransom, an element of the kidnapping charge.

¶4        During deliberations, the jury provided the superior court a note requesting a definition of "shield." Based on *State v. Stone*, 122 Ariz. 304 (App. 1979), the court proposed responding to the question by directing the jury that "shield" is defined as "[t]he holding or detaining of a person by force as defense or potential protection against interception, interference or retaliation by law enforcement personnel." Jacobs did not object, and later argued for the use of this definition. Although originally suggesting the *Stone* definition, the State objected to the phrase "by force" in the proposed response. After finding the statute construed in *Stone* was different than the current kidnapping statute, and noting *Stone* did not involve a child, over Jacobs' objection, the court responded to the question by directing the jury: "There is no statutory definition of the word 'shield.' Words of a statute are to be given their ordinary meaning. You are not to consult a dictionary or any other outside source (see admonition previously given)."

¶5        The jury did not seek further direction on the topic and, after further deliberation, convicted Jacobs as charged. The superior court sentenced Jacobs to 10 years in prison, a minimum term, crediting him with 369 days of presentence incarceration credit.[4] This court has jurisdiction over Jacobs' timely appeal pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1), 13-4031 and -4033(A) (2015).[5]

---

[3] Jacobs was also charged with, and convicted of, assault, a Class 1 misdemeanor and a domestic violence offense, but he did not allege any error regarding that conviction.

[4] Although the record suggests that the proper presentence incarceration credit may have been less than 369 days, there is no assertion on appeal that the credit given was erroneous.

[5] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

## DISCUSSION

### I.     The Superior Court Properly Denied Jacobs' Motion For Judgment Of Acquittal.

¶6          A superior court is directed to grant a motion for judgment of acquittal "if there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a); *see also State v. Lee*, 189 Ariz. 608, 615 (1997). In considering a motion for judgment of acquittal, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. West*, 226 Ariz. 559, 562 ¶ 16 (2011) (citations omitted). This court reviews the sufficiency of the evidence de novo, "viewing the evidence in a light most favorable to sustaining the verdict." *State v. Bible*, 175 Ariz. 549, 595 (1993).

¶7          Jacobs argues the State's evidence was insufficient to prove that he acted with the intent to hold his daughter "for ransom, as a shield or hostage." A.R.S. § 13-1304(A)(1). Jacobs claims "[t]here was no evidence that [he], by word or deed, used his daughter to hold the police at bay," so there was no evidence that Jacobs intended to use her as a shield. The evidence at trial, however, showed Jacobs did not leave the house or allow his daughter out of the house for several hours, despite persistent requests by the police that he do so. Multiple officers testified to Jacobs' repeated screams that they would have to kill him in front of his daughter if they came into the house. At the very least, this evidence allowed the jury to infer that Jacobs was holding his daughter "as a shield or hostage." A.R.S. § 13-1304(A)(1). "When reasonable minds may differ on inferences from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *Lee*, 189 Ariz. at 615. Thus, the superior court did not err by denying Jacobs' motion for judgment of acquittal.

### II.    The Superior Court Did Not Err In Responding To The Jury's Note Requesting A Definition Of "Shield."

¶8          Jacobs argues the superior court erred when it denied giving Jacob's definition of "shield" when responding to the jury's request for a definition of the term. The decision to instruct a jury further in response to a question is within the superior court's discretion. *State v. Ramirez*, 178 Ariz. 116, 126 (1994). Although a defendant is "entitled to an instruction on any theory reasonably supported by the evidence," *State v. Tarr*, 235 Ariz. 288, 293 ¶ 14 (App. 2014), the court need not define every word used in the

instructions, *State v. Barnett*, 142 Ariz. 592, 594 (1984). If a word is used in its ordinary sense and is commonly understood, the court is not required to provide a definition. *Barnett*, 142 Ariz. at 594. This court reviews a superior court's refusal to give a jury instruction for an abuse of discretion. *See State v. Moody*, 208 Ariz. 424, 467 ¶ 197 (2004).

**¶9**   Conceding that "shield" is not defined by statute, Jacobs argues the superior court committed reversible error in not giving the definition provided in *Stone*. *Stone*, however, interpreted a now-superseded kidnapping statute that arguably required a different mental state and criminalized different conduct than current law. 122 Ariz. at 308.[6] Even then, *Stone* purported to state what the court thought "shield" "implies" in the context of that superseded statute based on its "ordinary meaning." *Id.* at 309. In doing so, *Stone* never held the dictionary definition used was the precise, or even only, definition of the word.

**¶10**   The superior court correctly instructed the jury that the word "shield" is not defined by statute and that words in a statute are to be given their ordinary meaning. *See* A.R.S. § 13-104. Moreover, the word "shield" is not so technical that it acquired peculiar and appropriate meaning in the law. *See* A.R.S. § 1-213. Accordingly, Jacobs has shown no error in the superior court not defining the word for the jury. *See, e.g., State v. Cox*, 217 Ariz. 353, 356 ¶ 20 (2007) (no error by failing to define "control"); *State v. deBoucher*, 135 Ariz. 220, 226 (App. 1982) (no error by failing to define "endanger").

---

[6] *Stone* construed A.R.S. § 13-492(A) (1979), which stated: "A person . . . who . . . kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains any individual . . . as a shield or hostage." Jacobs, by contrast, was convicted of violating A.R.S. § 13-1304(A)(1), which states: "A person commits kidnapping by knowingly restraining another person with the intent to . . . [h]old the victim for ransom, as a shield or hostage."

## CONCLUSION

¶11      Because Jacobs has not shown the superior court erred, his conviction and resulting sentence are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama